OPINION
On January 29, 1998, Jill D. Schottenstein filed a complaint in the Franklin County Court of Common Pleas, Division of Domestic Relations, seeking a divorce from Steven Schottenstein. Mr. Schottenstein filed an answer and counterclaim for divorce. The parties had been married since April 19, 1983, and they had three children: Sarah, born February 8, 1986; Ashley, born June 20, 1987; and Abby, born November 21, 1988. On March 2, 1998, a guardian ad litem was appointed.
On March 26, 1998, a magistrate issued temporary orders, designating Ms. Schottenstein as the residential parent and legal custodian of the children. Mr. Schottenstein was granted companionship/visitation rights consisting of two evenings during the week and alternating weekends. Mr. Schottenstein was ordered to pay temporary child support in the amount of $8,889.67 per month and temporary spousal support in the amount of $4,500 per month. On May 22, 1998, the parties agreed to modify this order, with each parent having the children for alternating weeks. Mr. Schottenstein was to pay $13,657.46 per month for child and spousal support.
On June 3, 1998, the guardian ad litem filed his second preliminary report, indicating it was in the best interests of the children that Mr. Schottenstein be designated as the temporary residential parent and legal custodian. Further, the guardian ad litem recommended that Ms. Schottenstein's companionship rights be suspended until she completed mental health counseling and treatment.
On August 6, 1998, a magistrate's order was journalized in which Mr. Schottenstein was designated the residential parent and legal custodian pending further hearing on the matter. Ms. Schottenstein was limited to telephone contact with the children.
On August 19, 1998, Ms. Schottenstein filed a motion for the appointment of an attorney to represent the children. On August 27, 1998, the magistrate appointed an attorney to represent the children, as their wishes conflicted with what the guardian ad litem had determined was in their best interests.
On August 28, 1998, the magistrate filed an interim order, awarding Ms. Schottenstein supervised visitation with the children in accordance with the recommendations of the children's counselor.
On November 16, 1998, a magistrate's order was journalized, pursuant to the parties' agreement, designating Mr. Schottenstein the temporary residential parent and legal custodian, with each parent having companionship/visitation on alternating weeks. Pursuant to this order, Ms. Schottenstein was prohibited, absent an emergency, from seeking medical attention for or providing medication to the children without the approval of Mr. Schottenstein or the guardian ad litem if Mr. Schottenstein was not available.
On November 17, 1998, an order was journalized wherein Mr. Schottenstein's child support obligation was terminated, and he was ordered to pay $12,000 per month in spousal support.
On March 11, 1999, the guardian ad litem filed a motion for an order modifying parental rights and responsibilities, asserting that the trial court should restrict Ms. Schottenstein's involvement with her children in order to protect their best interests. On June 1, 1999, the guardian ad litem filed his fourth report in which he opined that Mr. Schottenstein should be designated the residential parent and legal custodian and that Ms. Schottenstein's companionship rights be restricted to supervised visits. In the interim, a hearing before a magistrate on the allocation of parental rights and responsibilities for purposes of the final decree of divorce was conducted.
On August 18, 1999, an entry was journalized joining M/I Schottenstein Homes, Inc. and The Steven Schottenstein Irrevocable Trust to the action.
On September 2, 1999, the magistrate issued a decision on the allocation of parental rights and responsibilities for the final divorce decree. As an initial matter, the magistrate first found that shared parenting was not in the best interests of the children because of the continued animosity between the parties. The magistrate had interviewed the children individually, and each indicated her desire to reside with Ms. Schottenstein. For a variety of reasons, the magistrate found it was in the best interests of the children that Mr. Schottenstein be designated the residential parent and legal custodian. Ms. Schottenstein was granted visitation consisting of alternate weekends and one weekday evening, plus alternating holidays/vacations, and alternate weeks during the summer.
The magistrate's decision/proposed order was to be effective upon the trial judge's approval. Ms. Schottenstein and the children each filed objections to the September 2, 1999 magistrate's decision.
On February 23, 2000, Mr. Schottenstein filed a motion for contempt against Ms. Schottenstein for her alleged interference with his custody of the children. As a result, a hearing was conducted. The trial court, despite the requests of Ms. Schottenstein and all three children, refused to consider the children's testimony, deeming it "irrelevant." On March 8, 2000, the magistrate found Ms. Schottenstein in contempt and sentenced her to twenty days in jail. Ms. Schottenstein appealed the contempt finding to this court, and we granted a stay. On December 12, 2000, this court reversed the contempt finding. This court determined that the trial court should have considered the children's testimony.
On March 16, 2000, the trial court adopted the September 2, 1999 magistrate's decision with respect to allocation of parental rights and responsibilities but modified the recommended visitation schedule. Ms. Schottenstein was granted alternate weekends with no mid-week visitation.
On June 23, 2000 and July 31, 2000, Mr. Schottenstein filed motions for contempt against Ms. Schottenstein for her alleged failure to comply with the March 16, 2000 order. Mr. Schottenstein also filed a motion to suspend or terminate Ms. Schottenstein's visitation. Under the March 16, 2000 order, Mr. Schottenstein was entitled to custody of the children on June 18, 2000 (Father's Day) and July 30, 2000. On July 31, 2000, Ms. Schottenstein's visitation was suspended pursuant to the issuance of a provisional writ of habeas corpus issued in a separate proceeding.
A hearing was held on the above contempt motions. Sarah Schottenstein, then age 14, testified at the hearing.
On September 15, 2000, the trial court found Ms. Schottenstein in contempt for her failure to effect a transfer of the children to Mr. Schottenstein, in violation of the March 16, 2000 order. Ms. Schottenstein was sentenced to thirty days in jail. Ms. Schottenstein could purge this contempt by forgoing two weekend visitations (as compensatory time for Mr. Schottenstein); by paying a $1,000 fine; and by paying counsel for Mr. Schottenstein $3,500. Ms. Schottenstein filed a notice of appeal with this court on September 26, 2000, and such appeal has been assigned case No. 00AP-1088. The Schottenstein children have also appealed from the same order. On September 29, 2000, this court granted Ms. Schottenstein's motion for a stay of execution pending appeal.
On November 8, 2000 and November 9, 2000, a hearing was held on additional and multiple contempt motions filed by each party. On November 9, 2000, the trial court issued an order finding Ms. Schottenstein in indirect criminal contempt and sentenced her to forty-five days in jail. On November 10, 2000, Ms. Schottenstein filed a notice of appeal with this court, and such appeal has been assigned case No. 00AP-1284. On November 13, 2000, this court again granted Ms. Schottenstein's motion for a stay of execution.
On January 8, 2001, the trial court filed a judgment entry pertaining to the same contempt motions and the November 8, 2000 and November 9, 2000 hearing thereon. The trial court denied Ms. Schottenstein's motions for contempt against Mr. Schottenstein. The trial court found Ms. Schottenstein in indirect criminal contempt for her "blatant and persistent disregard of this court's order and for her willful and repeated failures to return the children to the defendant on October 26, 2000 and continuing from October 29, 2000 through November 9, 2000." (Jan. 8, 2001 judgment entry at 5.) The Schottenstein children have also appealed from this order, and this appeal has been assigned case No. 01AP-94.
A trial on property and spousal support matters was held in April and May 2000. The parties submitted written closing arguments and proposed findings of fact and conclusions of law. On January 8, 2001, the trial court filed its decision and a judgment entry/decree of divorce. In this decision, the trial court denied Ms. Schottenstein's January 11, 2000 motion to remove the guardian ad litem. The trial court rejected Ms. Schottenstein's assertion that the guardian ad litem was biased and had failed to discharge his duties.
As to the allocation of parental rights and responsibilities, the trial court incorporated its March 16, 2000 decision with certain modifications. Again, Mr. Schottenstein was designated the residential parent and legal custodian of the children. Ms. Schottenstein was granted visitation on alternate weekends with no mid-week visitation. The children were to be with Mr. Schottenstein on Rosh Hashanah, Yom Kippur and Passover. In addition, Ms. Schottenstein was prohibited from removing the children from the central Ohio area during her visitation times, including summers and holidays, without the prior written approval of Mr. Schottenstein.
With respect to property issues, the trial court found that the appreciation of the M/I Schottenstein Homes, Inc. stock held by The Steven Schottenstein Irrevocable Trust (hereinafter "Trust") and The Steven Schottenstein 1994 Descendants Trust ("Descendants Trust") was not caused by marital labor or contribution. The trial court further found that Ms. Schottenstein failed to prove that she had any claim against the separate property holdings of the Trust or the Descendants Trust and, therefore, dismissed the trusts from the proceedings.
Among other findings, the trial court found that the value of Mr. Schottenstein's M/I Schottenstein Homes, Inc. 401(k) profit sharing plan as of January 29, 1998, the de facto date of the divorce, was $206,571. The trial court concluded that Mr. Schottenstein would retain such amount, and no award from the 401(k) plan was made to Ms. Schottenstein.
The trial court valued the marital household goods and furnishings in the possession of Ms. Schottenstein at $120,000. At trial, Ms. Schottenstein had proffered testimony that the value of such personal property was $15,487.50. The trial court excluded this rebuttal evidence. The trial court ordered that the parties retain all household goods and furnishings in their respective possession at the time of the final hearing. On the balance sheet attached to the divorce decree, Ms. Schottenstein was attributed the $120,000 value of all marital household goods and furnishings.
The trial court awarded Ms. Schottenstein spousal support of $12,000 per month for four years, plus fifteen percent of the total of Mr. Schottenstein's annual performance bonus from his employer for a term of four years.
As to attorney fees, the trial court ordered Mr. Schottenstein pay a total of $200,000 toward Ms. Schottenstein's attorney fees. Such award was reduced by $25,000 (representing interim payments already made by Mr. Schottenstein) and $31,099 (representing agreed credits against Ms. Schottenstein's share of the property division and as a result of Ms. Schottenstein being awarded an unequal division of marital assets).
On January 9, 2001, Ms. Schottenstein appealed from the trial court's judgment entry/decree of divorce. The Schottenstein children have also appealed from the final divorce decree. These appeals have been assigned case Nos. 01AP-36 and 01AP-95.
On January 17, 2001, Mr. Schottenstein filed yet another motion for contempt against Ms. Schottenstein for her alleged failure to comply with the trial court's January 8, 2001 order — the final decree of divorce. The bases for such motion included allegations that Ms. Schottenstein had interfered with Mr. Schottenstein's custody and had improperly sought medical attention for the children. A hearing was held on the motion. On February 20, 2001, the trial court issued a judgment entry finding Ms. Schottenstein in indirect criminal contempt. Specifically, the trial court found that Ms. Schottenstein failed to return two of the children to Mr. Schottenstein and sought medical attention for the children. Ms. Schottenstein was fined $1,000, was ordered to pay Mr. Schottenstein's counsel $16,185, and was sentenced to ninety days in jail.
Ms. Schottenstein has filed an appeal from this contempt finding and has again obtained a stay of the trial court's February 20, 2001 order pending the appeal. This appeal has been assigned case No. 01AP-227.
This court has consolidated the appeals in case Nos. 00AP-1088, 00AP-1284, 01AP-36, 01AP-94, 01AP-95 and 01AP-227.
In case No. 00AP-1088, Ms. Schottenstein sets forth the following assignments of error in relation to the trial court's September 15, 2000 order finding her in contempt:
 1. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY LIMITING THE TESTIMONY OF SARAH SCHOTTENSTEIN REGARDING HER INDEPENDENT AND AFFIRMATIVE WISH NOT TO VISIT WITH HER FATHER.
 2. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING APPELLANT IN CONTEMPT OF COURT.
 3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ISSUING A PURGE ORDER AND PUNISHMENT THAT WAS INAPPROPRIATE AND ILLEGAL.
In this same appeal, the minor children assign the following errors, which are identical to their mother's:
 1. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY LIMITING THE TESTIMONY OF SARAH SCHOTTENSTEIN REGARDING HER INDEPENDENT AND AFFIRMATIVE WISH NOT TO VISIT WITH HER FATHER.
 2. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING APPELLANT IN CONTEMPT OF COURT.
 3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ISSUING A PURGE ORDER AND PUNISHMENT THAT WAS INAPPROPRIATE AND ILLEGAL.
In case No. 00AP-1284, Ms. Schottenstein has assigned the following as error in relation to the trial court's November 9, 2000 order finding her in contempt:
 1. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT MRS. SCHOTTENSTEIN WAS GUILTY OF INDIRECT CRIMINAL CONTEMPT.
 2. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING APPELLANT IN CONTEMPT OF COURT.
 3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO FIND MR. SCHOTTENSTEIN IN CONTEMPT OF COURT AND AWARDING MRS. SCHOTTENSTEIN ATTORNEY[']S FEES AND EXPENSES.
 4. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY IMPOSING PUNISHMENT THAT WAS INAPPROPRIATE AND ILLEGAL.
In case No. 01AP-94, the minor children assign the following as error in relation to the same contempt finding:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED BY FINDING APPELLANT-MOTHER IN INDIRECT CRIMINAL CONTEMPT FOR HER ALLEGED INTERFERENCE WITH APPELLEE-FATHER'S CUSTODY OF THE MINOR CHILDREN.
 A. THE TESTIMONY OF THE PARTIES' MINOR CHILDREN ESTABLISHED THAT THEY INDEPENDENTLY AND AFFIRMATIVELY REFUSED TO RETURN TO THEIR FATHER, WHICH CONSTITUTED A DEFENSE TO THE CONTEMPT BASED ON INTERFERENCE WITH CUSTODY.
 B. THE TRIAL COURT ERRED BY LIMITING THE SCOPE OF THE TESTIMONY OF THE MINOR CHILDREN AT THE CONTEMPT HEARING.
 C. THE TRIAL COURT ERRED BY FINDING THE TESTIMONY OF THE MINOR CHILDREN IMMATERIAL AND IRRELEVANT.
In case No. 01AP-36, Ms. Schottenstein asserts the following errors in relation to the final divorce decree:
 1. The trial court erred and abused its discretion by designating Appellee as the children's custodian as such a designation was contrary to law and against the manifest weight of the evidence.
 A. The trial court abused its discretion and violated the children's rights when it refused to ascertain the children's wishes as to custodial placement and failed to follow the children's wishes to live with appellant as expressed to the magistrate.
 B. The trial court erred and abused its discretion by disregarding the fact that appellant had been the children's exclusive and primary caregiver during their entire lifetimes and failing to award custody to appellant due to her role as the primary caretaker.
 C. The trial court's decision awarding Appellee custody of the minor children was against the manifest weight of the evidence and constituted an abuse of discretion when the evidence showed that the children should be placed with appellant.
 D. The trial court erred and abused its discretion by failing to remove the guardian ad litem.
 E. The trial court erred and abused its discretion by not permitting appellant to remove the children from central Ohio.
 F. The trial court erred and abused its discretion by awarding Steve companionship with the children on all Jewish holidays.
 2. The Trial Court erred as a matter of law in dismissing the Trust as a party from this divorce action and abused its discretion in making the property division by failing to award Appellant one-half of the marital appreciation of stock; failing to award Appellant passive investment performance associated with her one-half interest in the marital 401(K) account; and for attributing all of the household belongings to Appellant.
 A. The Trial Court erred as a matter of law in dismissing the Trust at the close of Plaintiff's case when the party seeking dismissal had the burden of proof and had not met such burden.
 B. The facts clearly prove that Steve actively and directly participated in the decision making process as to M/I so as to require classification of the "appreciation" as "active" and "marital" in nature.
 C. In dividing a marital asset equally, it is an abuse of discretion and contrary to law to summarily exclude clear passive investment performance associated with the asset which occurred from the stipulated de facto date of divorce until the date of actual division.
 D. The trial court erred and abused its discretion by attributing the value of all personal property to Appellant.
 3. The trial court abused its discretion by awarding spousal support to Appellant for only four years in duration and failing to award appropriate attorneys fees.
In case No. 01AP-95, the minor children set forth several assignments of error in relation to the divorce decree, all of which challenge the trial court's custody and visitation determinations:
 I. THE TRIAL COURT ERRED IN GRANTING APPELLEE, FATHER, FULL CUSTODY OF THE MINOR CHILDREN AS THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 A. AN INDEPENDENT AND FAIR REVIEW OF THE EVIDENCE BY THIS COURT WILL ESTABLISH THAT APPELLANT, MOTHER, SHOULD HAVE BEEN AWARDED CUSTODY OF THE MINOR CHILDREN AS THE TRIAL COURT ERRED IN ANALYZING THE STATUTORY FACTORS OF OHIO REVISED CODE SECTION 3109.04.
 1. THE MINOR CHILDREN, SARAH, AGE 15, ASHLEY, AGE 13, AND ABBY, AGE 12, ARE OF AN AGE AND MATURITY LEVEL TO EXPRESS THEIR DESIRES AND HAVE ADAMANTLY EXPRESSED THEIR DESIRE TO BE PLACED WITH APPELLANT, MOTHER.
 2. THE TRIAL COURT ERRED BY NOT CONSIDERING THE EVIDENCE WHICH INDICATED APPELLANT, MOTHER, WAS THE PRIMARY CARE GIVER OF THE CHILDREN AND BY IGNORING THE APPELLEE, FATHER'S TESTIMONY THAT HE WAS MINIMALLY INVOLVED WITH THE CHILDREN PRIOR TO THE DIVORCE PROCEEDINGS.
 B. THE TRIAL COURT ERRED BY SELECTIVELY RELYING ON THE PSYCHOLOGICAL/PSYCHIATRIC EXPERT TESTIMONY TO AWARD CUSTODY TO APPELLEE, FATHER, WHEN THE EXPERT EVIDENCE CONSIDERED IN ITS ENTIRETY ESTABLISHES THAT APPELLEE FATHER'S PSYCHOLOGICAL ISSUES WERE THE SAME OR SIMILAR TO APPELLANT, MOTHER'S.
 1. THE TRIAL COURT ERRED BY IGNORING THE EXPERT TESTIMONY CONCERNING THE PSYCHOLOGICAL DAMAGE TO THE CHILDREN WHEN PLACING THEM WITH A PARENT THEY DO NOT WISH TO BE PLACED WITH.
 2. AN INDEPENDENT REVIEW OF THE EXPERT TESTIMONY COUPLED WITH THE CHILDREN'S EXPRESSED DESIRE TO LIVE WITH APPELLANT, MOTHER, WILL ESTABLISH THAT THE TRIAL COURT ERRED BY AWARDING CUSTODY TO APPELLEE, FATHER.
 C. THE TRIAL COURT ERRED BY IGNORING THE STATUTORY FACTOR REQUIRING THE COURT TO CONSIDER WHICH PARENT WOULD BE MORE LIKELY TO FACILITATE VISITATION WITH THE OTHER PARENT AND THE WISHES OF THE CHILDREN'S PARENTS REGARDING THEIR CARE.
 1. THE APPELLEE, FATHER ADAMANTLY TESTIFIED THAT IT WAS HIS DESIRE TO BE AWARDED CUSTODY OF THE CHILDREN AND THAT IF AWARDED CUSTODY HE WANTED APPELLANT, MOTHER, TO "NEVER SEE THESE CHILDREN AGAIN."
 2. THE TRIAL COURT ERRED WHEN IT ALLOWED DR. TARPEY TO TESTIFY OVER OBJECTION WHY APPELLEE, FATHER, WOULD MAKE SUCH A STATEMENT.
 D. THE TRIAL COURT ERRED WHEN IT IGNORED APPELLEE, FATHER'S, HISTORY OF EPISODIC LOSS OF CONTROL WITH THE CHILDREN WHEN SUCH BEHAVIOR WAS CONSISTENT WITH HIS PSYCHOLOGICAL AND PSYCHIATRIC PROFILES.
 1. THE TRIAL COURT ERRED WHEN IT ORDERED APPELLANT, MOTHER, TO UNDERGO PSYCHOTHERAPY BUT DID NOT REQUIRE APPELLEE FATHER TO SEEK COUNSELING REGARDING HIS EPISODIC LOSS OF CONTROL BEHAVIOR.
In case No. 01AP-227, Ms. Schottenstein submits the following assignments of error in relation to the trial court's February 20, 2001 post-decree order finding her in contempt:
 1. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ALLOWING TESTIMONY REGARDING EVENTS THAT OCCURRED PRIOR TO THE FINAL DECREE AND IN FINDING APPELLANT GUILTY OF CONTEMPT RELATING TO ORDERS THAT PREDATED THE DATE OF THE FINAL DECREE.
 2. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY REFUSING TO NOTIFY APPELLANT THAT SHE WAS BEING TRIED FOR CRIMINAL CONTEMPT AND FINDING THAT APPELLANT WAS GUILTY OF INDIRECT CRIMINAL CONTEMPT.
 3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY REFUSING TO FOLLOW THE LAW OF THE CASE WHICH REQUIRED THE TRIAL COURT TO INTERVIEW THE CHILDREN AND EXPLAIN THE COURT'S RULING TO THE CHILDREN.
 4. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING APPELLANT IN CONTEMPT OF COURT FOR INTERFERENCE WITH APPELLEE'S CUSTODY.
 5. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING APPELLANT IN CONTEMPT OF COURT FOR SEEKING MEDICAL TREATMENT FOR THE CHILDREN.
 6. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY IMPOSING PUNISHMENT THAT WAS INAPPROPRIATE AND ILLEGAL.
On January 16, 2001, Ms. Schottenstein filed a motion with this court in case Nos. 00AP-1088 and 00AP-1284, seeking a determination that these appeals are moot. She argues that the order(s) from which she originally appealed have been dismissed and/or dissolved pursuant to the final decree of divorce filed January 8, 2001. In response, Mr. Schottenstein has filed a memorandum contra this motion. On March 21, 2001, this court filed a journal entry indicating that this motion would be determined with the merits of the underlying appeals.
Mr. Schottenstein, appellee, has filed a motion to dismiss the appeals of the children in case Nos. 01AP-94 and 01AP-95. His bases for such motion are as follows: (1) no proper person has authorized any appeal on behalf of the children; (2) there is no statutory or common law authority permitting minor children to appeal from a judgment or decree in a divorce case when they are not parties to the judgment; (3) it is not the function of guardians ad litem and children's court-appointed attorneys to handle appellate matters; and (4) allowing children to appeal cases between their parents is against public policy. Appellant and the children's attorney advocate have filed memoranda contra appellee's motion.
Addressing the motions first, the motion filed by Mr. Schottenstein which seeks a dismissal of the appeals filed on behalf of his children is denied. The minor children of Mr. and Ms. Schottenstein were joined as parties in the action below and, as indicated infra, were independently represented by counsel. As parties, they have a right to appeal, especially such significant matters regarding where they spend their time and where they reside. We find no support for the proposition that their appeal is "unauthorized." Similarly, as parties who enjoy a right to appeal, such appeal is not against public policy.
We also deny the motion of Ms. Schottenstein seeking a declaration that two of the appeals are now moot. Entries adjudicating Ms. Schottenstein as being in contempt have been journalized. Those entries are not automatically rendered moot or void by the granting of a final divorce to the parties. Since the entries currently journalized potentially could be enforced, the appeals are not moot.
Given the foregoing, both motions are denied.
The numerous assignments of error presented on behalf of both Ms. Schottenstein and the children can generally be grouped into general categories centering on certain specific issues. One of the key issues is a determination about what role the three daughters should play in the proceedings. The trial judge made both the decision about temporary allocation of parental rights and responsibilities for the care of the children, and the permanent allocation of parental rights and responsibilities in the final decree of divorce, both determinations made without personally interviewing any of the daughters. Instead, the trial judge viewed the conversation between a magistrate and the children as fulfilling the trial court's responsibility to consider the wishes and concerns of the children. Under the circumstances presented before us, we view the trial court's refusal to meet with the children as inconsistent with both the letter and the spirit of R.C. 3109.04 and the rules of civil procedure.
R.C. 3109.04(B)(1) and (2) read:
 (B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation.
 (2) If the court interviews any child pursuant to division (B)(1) of this section, all of the following apply:
 (a) The court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem for the child.
 (b) The court first shall determine the reasoning ability of the child. If the court determines that the child does not have sufficient reasoning ability to express the child's wishes and concern with respect to the allocation of parental rights and responsibilities for the care of the child, it shall not determine the child's wishes and concerns with respect to the allocation. If the court determines that the child has sufficient reasoning ability to express the child's wishes or concerns with respect to the allocation, it then shall determine whether, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation. If the court determines that, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation, it shall not determine the child's wishes and concerns with respect to the allocation and shall enter its written findings of fact and opinion in the journal. If the court determines that it would be in the best interests of the child to determine the child's wishes and concerns with respect to the allocation, it shall proceed to make that determination.
 (c) The interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview. [Emphasis added.]
The mandatory nature of an interview process is well-established. See Badgett v. Badgett (1997), 120 Ohio App.3d 448, 450 ("plain language" of statute "absolutely mandates the trial judge" to interview child[ren]); Leasure v. Leasure (Mar. 12, 1998), Cuyahoga App. No. 72415, unreported; Riggle v. Riggle (Sept. 26, 2001), Wayne App. No. 01CA0012, unreported.
Applying the guidelines set forth in the statute, the record before us does not suggest that any of the three daughters, who are now fifteen, fourteen and twelve, respectively, are lacking in reasoning ability or communication skills. The record also does not indicate that the best interests of the children are served by having the trial court refuse to determine their wishes and concerns. We affirmatively draw the distinction between determining the wishes/concerns of the children and following the wishes/concerns of the children in making the allocation of parental rights and responsibilities in the divorce decree.
R.C. 3109.04(B)(2)(c) clearly contemplates that the trial judge shall meet with the children individually in chambers.
Some trial courts have delegated the responsibility to interview the minor children to magistrates as part of the trial process. See Civ.R. 75(C) and Civ.R. 53. In the case of the Schottenstein children, two different magistrates interviewed the children at different stages of the proceedings. The first interview occurred in December of 1998 in conjunction with a modification of temporary orders. The second interview occurred in early June of 1999 as part of the decision-making process with respect to allocation of parental rights and responsibilities for the final decree of divorce.
The magistrate who conducted the second interview rendered a magistrate's decision on September 2, 1999. Objections to this magistrate's decision were filed both on behalf of Ms. Schottenstein and on behalf of the children who had been made parties to the divorce case. Both the children and Ms. Schottenstein requested the trial judge to conduct his own interview of the children to hear for himself their desires and to consider those desires as opposed to adopting the findings of the magistrate which named the father of the children the residential parent and limited the time the children had with their mother to alternate weekends, one weekday evening, alternate holidays and alternate weeks during summer break from school.
While the objections to this magistrate's decision were pending, the parties were having a great deal of difficulty getting the girls to follow the court order. This led to Mr. Schottenstein filing contempt charges against his wife on February 23, 2000 for one of several such filings.
Despite all this turmoil and changing circumstances involving the Schottenstein children, the trial judge refused to take additional evidence from the girls or to conduct an interview with them himself. Instead, on March 16, 2000, the trial judge adopted most of the magistrate's decision with respect to allocation of parental rights and responsibilities, but further restricted the time the girls spent with the parent who they preferred to be the residential parent. The trial judge removed the weekly mid-week time with the mother, leaving the girls with alternate weekends, alternate holidays and alternate weeks during the summer as the allowed time with their mother.
We view the trial court's handling of this issue as error. We acknowledge the practical necessity of the delegation of such matter to the magistrates. However, the trial court must place itself in a position to make a full, independent review of the magistrate's decision. Further, the trial judge must comply with Civ.R. 53 in its handling of matters delegated to magistrates.
Civ.R. 53 (E)(4) reads:
(4) Court's action on magistrate's decision
 (a) When effective. The magistrate's decision shall be effective when adopted by the court. The court may adopt the magistrate's decision if no written objections are filed unless it determines that there is an error of law or other defect on the face of the magistrate's decision.
 (b) Disposition of objections. The court shall rule on any objections. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.
 (c) Permanent and interim orders. The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered. The court may make an interim order on the basis of the magistrate's decision without waiting for or ruling on timely objections by the parties where immediate relief is justified. An interim order shall not be subject to the automatic stay caused by the filing of timely objections. An interim order shall not extend more than twenty-eight days from the date of its entry unless, within that time and for good cause shown, the court extends the interim order for an additional twenty-eight days. [Emphasis sic.]
Civ.R. 53(E)(4)(b) allows a trial court to refuse consideration of additional evidence when a party could have presented the information before the magistrate, but did not. In the situation involving the Schottenstein girls, several new facts developed between the close of the hearing before the magistrate and the trial judge's adopting of the magistrate's decision. The trial court acknowledged that change had occurred by changing the allocation of time at the time the magistrate's decision was adopted.
Further, over nine months had passed since the interview of the children before the magistrate. The trial court was not in a position to evaluate for himself the impact of the intervening events on the desires and concerns of the children. Where the trial court is on notice of potentially significant changes in the circumstances involving the children, the trial judge should accept additional evidence and in many cases should conduct his or her own interview of the children as contemplated by R.C. 3109.04.
This interview by the trial judge is also consistent with the trial court's obligation to do a full, independent review of the matter referred to the magistrate. Transcripts do not convey the full impact that a personal contact with a child may communicate. A transcript does not always reflect a child's tears, frowns, smile or other aspects of demeanor. Further, a personal interview communicates to the child that the child's thoughts and feelings are important to the judge who make the final decision about so much of the child's life — where the child lives, where the child goes to school and how much time the child spends with the nonresidential parent.
In our first opportunity to address issues regarding this divorce, we clearly addressed the need for carefully considering the thoughts and concerns the three children of this marriage. In December 2000, we wrote:
 The three daughters had earlier expressed their strong desires to live with their mother when the court was considering the allocation of parental rights and responsibilities for purposes of the final decree of divorce. However, the final decree of divorce had not been issued or journalized at the time the trial court was presented with this contempt. The parties had been operating under the modified temporary order which named the father, Steven Schottenstein, the residential parent and were still doing so as of the time this case was argued before this appellate court almost two years after the modified temporary order was journalized. The three young women could justifiably have felt that their opinions counted for nothing, or at least had been given little weight up to that point in time.
 Divorces are difficult times for children, whether young or adolescent. The children have little or no control over what is happening in their worlds. They have little or no control over what is happening between their parents. They have little or no control over basic aspects of their everyday lives, such as where they live or go to school.
 Divorces also can lead to dramatic changes in the standard of living for the children, again leaving the children helpless to avoid the reduced standard of living that comes. At worst, the children blame themselves for the bad things happening to them and around them. A small child may feel that they are bad or bad things would not be happening to them. A more mature child may still harbor such a small child inside.
 By the time a "child" reaches age fourteen, that "child" may be fully grown and physically mature. Parents simply cannot use the same means to control a fourteen-year-old that can be used with a preschooler. The fourteen-year-old has to at least comprehend the will of the parents if cooperation is to be expected. In the context of the Schottenstein case, the trial court should have at least interviewed the fourteen-year-old in order to ascertain her view as to what was happening in her world and why she felt she did not want to walk a short distance from her school to her father's new home to visit him or spend time with him.
 The maturity of the children who were eleven and twelve at the time of the contempt proceedings is less clear. However, their need to feel that they had some control of their world could have been even greater. They had also expressed their desires to live with their mother and to be free of a schedule that moved them from house to house each week.
 The trial court also should have considered taking the time to explain its ruling on the contempt to the three young women/girls. Although the guardian ad litem could normally fulfill this role, the guardian ad litem in the contempt hearing conducted himself in many ways as if he were a second attorney for the girls' father, cross-examining the mother in very hostile fashion at times.
 The trial court ultimately entered a new order which threatened the mother of the girls with incarceration for twenty days and which threatened separating the girls from their mother for six weeks. A failure to explain this order could leave the young women with the impression that their attempts to express themselves had caused their mother to be jailed and them to be under the complete control and supervision of the parent they were trying to avoid. Under the circumstances, the trial court should have met with the girls, both to hear their views and then to explain later why their views did or did not have an impact on his ruling.
 We no longer live in a time when children are mere chattels, with no rights and no inherent merit. We no longer live in a time when maxims such as "spare the rod and spoil the child" are generally accepted. Instead, a parent who uses a rod is at real risk of child abuse charges and/or loss of custody through juvenile court proceedings. For court orders to be effective, children the age of the Schottenstein girls have to at least accept the validity of the court's order. The trial court did not do enough to ensure acceptance and respect for its decision here.
Scottenstein v. Schottenstein (Dec. 12, 2000), Franklin App. No. 00AP-285, unreported.
The current version of R.C. 3109.04 is a successor statute to the former "election" statute (former R.C. 3109.04[A]), which allowed a child "* * * twelve years of age or older * * * to choose * * * the parent with whom the child is to live," unless, inter alia, the court found the selected parent "unfit." Bawidamann v. Bawidamann (1989),63 Ohio App.3d 691, 695. Had the former statute, amended only in the very recent past, still been in effect, all three of the Schottentstein daughters most assuredly would have elected to reside with their mother, who had provided, clearly by far, the much larger part of their care their entire lives.
The enactment of the current R.C. 3109.04 procedures for ascertaining the desires and concerns of minor children was not intended to completely eviscerate the intention of its predecessor election statute. A reading of the current statute in its entirety reveals no such intention to effect a complete reversal of the earlier law regarding election by minor children. Instead, we view the current statute as an expansion of the power of minor children to have their concerns considered before their eleventh and twelfth birthdays.
As a result, as summarized below, we sustain the assignments of error challenging the trial court's refusal to meet individually with the three daughters and to take additional evidence before deciding who should be named residential parent in the final decree of divorce.
The reticence of the trial court to personally hearing evidence from the Schottenstein daughters also impacted the various contempt proceedings. The trial court's reticence may be attributed, at least in part, to an inaccurate understanding of a legal principle. For many years, courts have recognized that minor children have the ability to thwart court orders about where the children will spend their time. The early case law developed at a time when statutes and judgments referred to custody of children and custodial parents. Now, however, the statutes refer to allocation of the children's time, residential parents and nonresidential parents. However, the ability of "children," especially of adolescents and teenaged young women or men, to thwart court orders has not changed with the mere change of statutory language.
The trial judge in this case acknowledged the case law which holds that a party would not be found in contempt where the children made an independent decision not to go on visitation with a noncustodial parent. However, the trial court nonetheless determined that such case law applies only to situations where children refuse to follow a court order to spend time with a nonresidential parent, not to cases where children refused to return to the home of the residential parent. The trial court erred in this determination.
In a statutory scheme which focuses on allocating a child's time, the same defenses are available to contempt alleged by a residential parent as by a nonresidential parent. If the child or children of the parties thwarts the court order allocating parental rights and responsibilities, it does not matter whether the order is for time with a residential parent or for time with a nonresidential parent.
Apparently because of its error of law, the trial court repeatedly refused to hear testimony from the daughters about why they were unwilling at times to return to their father's home. On the isolated occasion when the trial court allowed two of the daughters to testify, the trial court improperly minimized the scope of the testimony. Because of this error, all of the contempt proceedings before us were affected and the judgments of contempt for violations of the order with respect to the time to be spent with their father must be reversed.
Thus, as delineated below, the assignments of error relative to the contempt proceedings are sustained.
Another broad area of concern in this case is the division of marital property. We find no abuse of discretion or error of law with respect to the division of marital property. The primary issue regarding division of property dealt with a possible division of stock in M/I Homes which appreciated over $10 million in value during the term of the marriage. The trial court adequately and accurately set forth its analysis of the issue and its rationale underlying its determination why this stock was not marital property. As we concur with the trial court's rulings as to these issues, we do not feel compelled to restate the same analysis here.
A related area of concern arising in this case is the award of spousal support. Again, the trial court exercised reasonable discretion in its awards. We need not reiterate the trial court's well-reasoned analysis.
The remaining assignments of error with respect to the Schottenstein children are rendered moot by our ruling with respect to the failure of the trial court to fully consider the decision and concerns of the Schottenstein children.
Apparently several changes have occurred which will require the trial court's consideration on remand. Various filings indicate that Mr. Schottenstein remarried shortly after the final decree was journalized. The presence of a stepmother is a significant change which will require consideration. The interaction of Mr. Schottenstein with his daughters, individually and collectively, since the divorce was journalized may impact the trial court's view of what will best serve the interests of one or more of the children. Other significant occurrences unknown to this appellate court could also impact the trial court's decision. As we disdain the concept of a "vain act" in our attempt to rectify error (see, e.g., Scassa v. Scassa [July 7, 1998], Carroll App. No. 688, unreported), we are not willing to assume that the trial court will simply "go through the motions" of complying with our order of remand, while intending to reinstate its previous order. If the trial court cannot evince an open mind in addressing the merits of the conflicting positions on allocation of parental rights and responsibilities, including consideration of the summarily-dismissed, "irrelevant" opinions of the children, then the trial court certainly has the option of recusing itself from further involvement in the case.
Certain of the assignments of error have been rendered moot by our rulings above. Because all the contempt findings which are before us are now vacated, the trial court does not have the ability to treat Ms. Schottenstein as a person who has been found guilty of contempt repeatedly. The guardian ad litem has been removed and will not automatically be reinstated. The advisability of a restriction on either parent removing one or more of the children from central Ohio will need to be revisited, based upon subsequent events.
We are not in a position to state what a trial judge will rely upon in making a new order regarding the allocation of parental rights and responsibilities. Indeed, we are not in a position to know what judge will make subsequent rulings on this case. Thus, all assignments of error regarding weighing the expert testimony are rendered moot by our foregoing rulings.
In summarizing the disposition of these consolidated appeals, as indicated infra, the motions filed by both Ms. Schottenstein and Mr. Schottenstein are denied.
To the extent practicable, particularly in light of "overlapping" assignments of error and interrelated issues, we summarize the disposition of the appeals as follows:
Case Nos. 00AP-1088, 00AP-1284, 01AP-94, and 01AP-227, all arise from the contempt proceedings. Accordingly, to the extent indicated in this opinion, the assignments of error which challenge the trial court's contempt findings are sustained. In particular, we sustain the following: in case No. 00AP-1088, Ms. Schottenstein's second assignment of error and the children's identical second assignment of error; in case No. 00AP-1284, Ms. Schottenstein's first, second and third assignments of error; in case No. 01AP-94, the children's general assignment of error, exclusive of its "sub-issues," challenging the indirect criminal contempt finding; and, in case No. 01AP-227, the fourth and fifth assignments of error. As discussed above, the remaining assignments of error set forth in the contempt appeals are rendered moot.
The final two cases, Nos. 01AP-36 and 01AP-95, are the appeals resulting from the final divorce decree. In Ms. Schottenstein's appeal, No. 01AP-36, she sets forth three general assignments of error, with numerous lettered "subparts." We sustain the first assignment of error only to the extent it challenges the trial court's disposition of the parental rights and responsibilities related to the minor children, as discussed at length herein. The remaining second and third assignments of error related to the property distribution and spousal support are overruled.
Finally, in case No. 01AP-95, the minor children's appeal from the final decree, we similarly sustain the first assignment of error insofar as it challenges the trial court's disposition of issues related to the parental rights and responsibilities. The remaining assignments of error are overruled.
To the extent indicated herein, this case is affirmed in part and reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.
Motions denied;
Judgment affirmed in part and reversed in part; cause remanded.
KENNEDY, J., concurs.
BOWMAN, J., concurs in part and dissents in part.